BICKEL v FAIRCHILD

Docket No. 77-1225. Submitted January 5, 1978, at Lansing.—Decided
May 22, 1978. Leave to appeal applied for.

John E. Bickel and others brought an action in Montmorency
Circuit Court against James I. Fairchild and other defendants
to quiet title to their oil and gas interests under the dormant
mineral act. Plaintiffs claim superior title by operation of the
statute. Defendants, including Shell Oil Company, an oil and
gas leaseholder, claim title through their predecessors in title.
Summary judgment, Joseph P. Swallow, J., for defendant Shell
Oil Company holding Shell to be the leasehold owner of all the
oil and gas rights in the property. Plaintiffs appeal. *Held:*

Holders of gas and oil interests have a property right that is
given to them by private publicly recorded contracts and these
rights are subject to being sold, mortgaged, leased, devised or
inherited just as the surface rights are; statutory termination
of oil and gas interests of known owners of subsurface rights
under the dormant mineral act is prohibited by our state and
Federal constitutions because it would be a law impairing the
obligation of contract.

Affirmed.

1. Mines and Minerals—Statutes—Dormant Mineral Act—Oil
   and Gas Interests—Abandonment—Preservation of Inter-
   ests.

   The dormant mineral act provides that any person holding any
   interest in oil or gas in any land, other than the surface owner,
   shall be deemed to have abandoned such interest unless during
   any 20-year period such person relative to the land does one of
   five things: (1) secures a drilling permit, (2) actually produces or
   withdraws gas or oil, (3) sells, leases, mortgages or transfers
   such interest by recorded instrument, (4) uses the property
   subject to such interests for underground gas storage, or (5)
   records a notice of interest with the Register of Deeds; a three-
   year grace period was provided by the act for persons affected

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 54 Am Jur 2d, Mines and Minerals §§ 141, 142, 191.
[3] 54 Am Jur 2d, Mines and Minerals §§ 20, 102, 148.

to record their notice to preserve their interests (MCL 554.291 *et seq.;* MSA 26.1163 (1) *et seq.).*

2. MINES AND MINERALS—STATUTES—DORMANT MINERAL ACT—PUR-
   POSE—ENERGY EXPLORATION.

   The dormant mineral act has a real public purpose in our energy short and energy conscious generation and that purpose is to encourage exploration drilling of new gas and oil wells (MCL 554.291 *et seq.;* MSA 26.1163 (1) *et seq.).*

3. CONTRACTS—OIL AND GAS INTERESTS—PROPERTY RIGHTS—TRANS-
   FERABILITY.

   Holders of gas and oil interests have a property right that is given to them by private publicly recorded contracts and these rights are subject to being sold, mortgaged, leased, devised, or inherited just as the surface rights are.

4. CONSTITUTIONAL LAW—STATUTES—OIL AND GAS INTERESTS—SUB-
   SURFACE RIGHTS—IMPAIRMENT OF CONTRACT—CONSTITUTIONAL
   PROHIBITION.

   The effect and application of the dormant mineral act to known property owners of sub-surface rights in a manner so as to deprive those owners of their interests in oil and gas without notice, hearing or compensation is prohibited by our state and Federal constitutions as a law impairing the obligation of contract (MCL 554.291 *et seq.;* MSA 26.1163 (1) *et seq.).*

*Denfield, Timmer & Taylor,* for plaintiffs.

*Monaghan, Campbell, Loprete & McDonald* (by *John H. Norris),* for defendants.

Before: V. J. BRENNAN, P. J., and D. E. HOL-
BROOK and R. B. MARTIN,* JJ.

R. B. MARTIN, J. The parties agree on the follow-
ing facts: On August 16, 1944, Isabelle Worth
deeded real estate to James and Grace Fairchild,
reserving minerals, oils, gases, ores and stone. On
February 14, 1956, Isabelle Worth died. Carl and
Doris Worth are her successors in interest. On

---

* Circuit judge, sitting on the Court of Appeals by assignment.

April 5, 1971, James and Winifred Fairchild, husband and wife, conveyed to John and Etta Bickel, husband and wife. The grantors here, likewise, reserved minerals, oils, gases, ores and stone.

On January 30, 1973, Carl and Doris Worth granted an oil and gas lease to Shell Oil Company.

On September 4, 1974, the Fairchilds granted an oil and gas lease to Dolores Cook.

On November 1, 1974, the Bickels leased oil and gas rights to Getty Oil Company, Skelly Oil Company, Total Leonard, Inc., and Dow Chemical. Getty Oil and Skelly thereupon assigned part of their interest to Saxon.

Plaintiffs brought suit to quiet title to their oil and gas interests under the dormant mineral act, MCL 554.291, *et seq.;* MSA 26.1163(1), *et seq.* The Fairchilds and Dolores Cook, by cross-complaints, asserted their rights against all the others.

The trial court, on motions for summary judgment, found Shell Oil Company was the leasehold owner of all the oil and gas rights in the property. All other claimants were denied any interest. Plaintiffs appeal.

This suit tests the constitutionality of the dormant mineral act. We commence by saying that we need not and do not decide the constitutionality of the prospective provisions of the act. The statute was 1963 PA 42 and became effective September 6, 1963. It provides that any person holding any interest in oil or gas in any land, other than the surface owner, shall be deemed to have abandoned such interest unless during any 20 year period such person relative to the land does one of five things:

(1) Secures a drilling permit, or

(2) actually produces or withdraws gas or oil individually or as part of a pool; or

(3) sells, leases, mortgages or transfers such interest by a recorded instrument; or

(4) uses the property subject to such interests for underground gas storage; or

(5) records a notice of interest with the Register of Deeds.

A three-year grace period was provided by the act for persons affected to record their notice to preserve their interests.

The parties agreed that Isabelle Worth and her successors did none of the 5 things above for a period of 20 years. The record shows the January 30, 1973, lease to Shell Oil was recorded on February 20, 1973.

We agree with appellants that in our energy short and energy conscious generation, the legislative act has a real public purpose—to encourage exploration and drilling of new gas and oil wells. Some oil and gas rights, with the passage of time, have become fractionalized and distributed among numerous owners, many who are no longer locatable and perhaps even deceased. No oil company will spend the time and expense of tracing all the possible owners down in order to do expensive exploratory drilling with no guarantee of favorable results.

On the other hand, the gas and oil interest holders have a property right given them by private publicly recorded contracts. These rights are subject to being sold, mortgaged, leased, devised or inherited just as the surface rights are. Whose rights are paramount, the state's or the individual's?

A line of cases has discussed the evolution of the doctrine that some impairment of contracts is permissible under the Federal constitution. The basic one is *Home Building & Loan Association v*

*Blaisdell,* 290 US 398; 54 S Ct 231; 78 L Ed 413 (1934). It contained a vigorous 4-vote dissent. The Court was confronted with the Minnesota statute giving additional time for redemption from mortgage foreclosure sales during the depression. Such time was given under strict conditions and the statute was to be effective only for a few years.

The majority felt the state reserved the power to protect itself and to act in the best interests of all of its people. This reservation was a part of every contract. The constitutional prohibition of impairment of contract was " * * * not an absolute one and is not to be read with literal exactness like a mathematical formula". Some criteria were used in determining whether the state could impair the obligation of the contract: (1) the Legislature and the state supreme court found a grave emergency existing requiring state help, (2) the impairing statute was to help the basic interest of society and not just a few individuals, (3) the relief granted was appropriate to the need and granted on reasonable conditions, and (4) the legislation was temporary and with a short given limit in time. We note also that the statute gave some added protection to the mortgagees who were the parties being deprived of their right to enforce their original contract.

In *El Paso v Simmons,* 379 US 497; 85 S Ct 577; 13 L Ed 2d 446 (1965), Texas, by statute, sold land to raise money for schools. The buyers paid very little down and were obligated to pay very little for a long term of years. If the buyers forfeited their rights because they failed to make payments, they were given an unlimited right to redeem by catching up. When oil and gas discoveries and an increasing population made speculation in oil and gas rights a very profitable thing, the statute was

amended to require redemption in five years and the only ones given a right of redemption were the last contract vendees. This was upheld by the United States Supreme Court on the basis of *Home Building, supra.* The Court believed the statute was "quite clearly necessary" and the measure was a mild one and not too much of a hindrance to the purchaser.

Justice Black dissented. He felt the state could not make a contract under a statute and then by statute repudiate the contract without compensating the injured party. He saw no reason to adopt the balancing principle of *Home Building.*

The United States Supreme Court in *United States Trust Company of New York v New Jersey,* 431 US 1; 97 S Ct 1505; 52 L Ed 2d 92 (1977), found an unconstitutional impairment of contract. There the states of New York and New Jersey had, by statute, given bond holders certain rights to a port authority's revenues. Twelve years later they repealed that statute. By a 4 to 3 vote the Court found it was an unconstitutional impairment of contract. The dissent balanced the rights of the government and the bond holders and found the new statute did no real harm to the bond holders and should be upheld.

Our Court has dealt rather comprehensively with the subject in *Washtenaw Community College Education Association v Board of Trustees of the Washtenaw Community College,* 50 Mich App 467; 213 NW2d 567 (1973). It accepted the theory of balancing of rights and interests in determining whether a contract could be impaired.

In our particular case, the statute would deprive known property owners of their sub-surface rights without notice, hearing or compensation. The statute was passed in 1963. This was long before any real fossil fuel crisis in this country. By its provi-

sions, it required the Worths to do something affirmatively within three years or lose their property. When the act became effective as to Isabelle Worth's successors in interest, there was no grave state emergency requiring state help. The act, at that time, was aimed at helping a few individuals or companies and not all of society. The relief granted could reasonably have required some notice to known interest owners. The relief was not temporary or for a limited time. The property owners' rights were not protected as they were in the statute in *Home Building.*

Our chief concern here is that the Worths were a known, identifiable, suable interest holder. They had, by contract, certain property interests in the land. Those property interests were known to all of the other parties to this litigation. Why should other parties be given the Worths' property interests because the Worths had not used them or filed a notice they still claimed them? Without any grave emergency situation requiring such drastic action, the statute would take property obtained by contract from the Worths and give it to others. Through the recorded chain of title, the Worths' contractual rights were recognized by the other claimants.

Even in using the "balancing" idea of *Home Building,* we too must balance certain principles. There is a presumption that legislatively enacted statutes are constitutional. There is a presumption that contracts should not be impaired by legislative acts. Balancing cases have had dissents so the weighing of rights and interests has not always been easy.

We agree with the learned trial judge. The effect and application of this act as to the defendants at bar is prohibited by our state and Federal constitutions as a law impairing the obligation of contract.

Affirmed.