[Civ. No. 23543. Fourth Dist., Div. Two. May 1, 1981.]

JOSEPH J. DONLAN et al., Plaintiffs and Appellants, v.
CARL M. WEAVER et al., Defendants and Respondents.

COUNSEL

John A. Dundas II and Shepherd, Shepherd & Dundas for Plaintiffs and Appellants.

David M. Garland and R. F. Wade for Defendants and Respondents.

OPINION

**KAUFMAN, Acting P. J.**—Plaintiffs commenced this action under former Code of Civil Procedure section 751.3, now section 772.030 of the Code of Civil Procedure,[1] which authorizes the owner of land upon which there is an oil and gas lease to institute an action to terminate the lessee's right of entry to or occupation of the surface or surface zone of the leasehold land under specified circumstances. Defendants generally demurred to the complaint on the grounds that the statute violates the impairment of contracts clauses of both the United States and California Constitutions (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9) and the substantive due process guarantees of the federal and state Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 15). The trial court sustained defendants' demurrer, granting plaintiffs leave to amend. Plaintiffs declined to amend and appeal from the ensuing judgment of dismissal.

*Facts*

■ On review of a judgment of dismissal following the sustention of a general demurrer, the facts are derived from the allegations of the complaint.

Plaintiffs are the owners of four adjoining lots (lots 10, 12, 14 and 16) in the City of Huntington Beach. The property is subject to an oil and gas lease executed in 1926 by the predecessors of plaintiffs and defendants, respectively. The lease gives to the lessees "the sole and exclusive right and privilege to explore for, discover, produce, extract, treat, refine, transport, sell and otherwise dispose of and generally handle... all petroleum, natural gas and other hydrocarbon substances in, under and upon" the described property. The term of the lease is for 20 years from its date "and so long thereafter as petroleum in...paying quantities ...is produced...."

---

[1] All statutory references will be to the Code of Civil Procedure, unless otherwise specified.

Section 751.3 was originally enacted in 1971. (Stats. 1971, ch. 1586, § 1, p. 3200.) In 1980 it was repealed and reenacted as sections 772.010—772.060. (Stats. 1980, ch. 44, § 16, p. 117.) For convenience, we shall refer to sections 772.010—772.060 collectively as "the statute."

Plaintiffs allege that on a portion of the land (lots 10, 12 and 16) there is no well or well bore that would preclude relief under the statute and that plaintiffs "are willing to relocate pipelines, roadways, equipment or lease facilities in such manner as will most effectively free the subject land for surface use while safeguarding continued oil and gas operations in a practical and economic manner." It is further alleged that "[t]ermination of the right of entry or occupation as to the surface and surface zone of said Lots 10, 12 and 16...in the manner requested by plaintiffs, will not significantly interfere with the right of the defendant lessees under the lease, to continue to conduct operations for the production of oil from the leasehold strata beneath the surface zone in a practical and economic manner, and to gather, transport and market such oil."

The prayer seeks termination of defendants' right of entry to or occupation of the surface and surface zone of lots 10, 12 and 16 "subject to such terms and conditions as the court deems fair and equitable."

### Discussion of Contentions and Issues

█  In addressing the constitutional argument, the parties assume sub silentio that the statute applies retroactively, that is, that it authorizes termination of rights of entry or occupation under oil and gas leases executed before as well as after the effective date of the statute. We agree that that is so. Although the statute contains no express provision for retroactive application and although the operative language does not necessarily establish a legislative intent that the statute apply retroactively, an interpretation that the statute was not to apply to preenactment leases would result in delaying the remedial effect of the statute for more than 20 years. That was probably not what the Legislature had in mind.

Moreover, a legislative intent that the statute apply to preenactment leases is apparent from the language of the legislative finding of public interest and necessity in the 1971 statute by which section 751.3 was enacted. It identified the "evil" to be remedied as "... the continued existence of a right of entry or occupation on the surface...related to an *existing* oil and gas lease or community oil and gas lease, which right of entry or occupation affects and encumbers surface areas no

longer utilized or needed for the conduct of leasehold operations."[2] (Stats. 1971, ch. 1586, § 3, p. 3202; italics added.)

In turning to the constitutional issues, we observe preliminarily that a number of defendants' contentions and arguments are based upon facts not alleged in the complaint, and it is apparent from the several briefs that some important facts are in dispute. Under these circumstances, the matter having been determined on demurrer, the constitutionality of the statute must be determined on the basis of the facts as alleged in the complaint. Essentially we are concerned with the validity of the statute on its face, not as applied to particular facts, for section 772.040 authorizes rendition of a judgment terminating the lessee's right of entry or occupation of the surface and surface zone only when specified circumstances have been shown to exist, and, even then, "subject to such conditions as the court deems fair and equitable."[3] Here the actual facts have not been ascertained, and the statute has not yet been applied.

## Impairment of Contracts

Plaintiffs first urge that the statute does not violate the impairment of contracts clauses because a contract obligation is not impaired "unless the alteration in the law deprives [a contracting party] of a substantial right or remedy. If, despite a change in the law, the [contracting party] may enforce [his] rights no less effectually than before; if there has been no encroachment upon *valuable* contractual rights,

---

[2]The finding of public interest and necessity read in full: "In many significant areas of this state there are areas of land, the surface of which cannot be developed or used by reason of the continued existence of oil production equipment, lease facilities, or pipelines, and by reason of the continued existence of a right of entry or occupation on the surface thereof related to an existing oil and gas lease or community oil and gas lease, which right of entry or occupation affects and encumbers surface areas no longer utilized or needed for the conduct of leasehold operations. Land which should be utilized in the orderly growth and development of urban areas remains needlessly fallow and unproductive and is a source of economic and social blight on surrounding areas. It is in the public interest that due procedures be established to make it possible to free, for surface use, land in urban areas which is not reasonably needed for oil and gas operations.

[3]Section 772.050 reads in relevant part: "(a) The court may qualify the judgment terminating the surface and surface zone right of entry or occupation so as to provide for limited surface and surface zone easements that the lessee may continue to enjoy within the subject land. [¶] (b) A judgment may be conditioned upon the relocation of pipelines, roadways, equipment, or lease facilities in such manner as will most effectively free the subject land for surface use while safeguarding continued oil and gas operations in a practical and economic manner...."

then the obligations of the contract have not been impaired." (*State School Bldg. Fin. Com.* v. *Betts* (1963) 216 Cal.App.2d 685, 691 [31 Cal.Rptr. 258], and cases there cited; orig. italics, cf. *Allied Structural Steel Co.* v. *Spannaus* (1978) 438 U.S. 234, 244-245 [57 L.Ed.2d 727, 736-737, 98 S.Ct. 2716].)

Plaintiffs point out in this connection that a judgment terminating the right of entry or occupation of the surface or surface zone is authorized by the statute only if the evidence shows that "[t]ermination of the right of entry or occupation...in the manner requested by the plaintiff, or subject to such conditions as the court may impose...will not significantly interfere with the right of the lessee, under the lease, to continue to conduct operations for the continued production of oil from leasehold strata beneath the surface zone in a practical and economic manner, utilizing such production techniques as will be appropriate to the leasehold area, consistent with good oilfield practice, and to gather, transport, and market the oil." (§ 772.040, subd. (c).)[4] The complaint, of course, alleges that defendants' right of entry or occupation of the surface or surface zone of lots 10, 12 and 16 can be terminated without significantly interfering with the enumerated rights of defendants.

---

[4]Section 772.010 limits the applicability of the statute to land located in urban areas. It provides: "This article applies only to lands within a city in any county with a population exceeding 4,000,000, or with a population of more than 700,000 and less than 710,000 as determined by the 1960 Federal Decennial Census."

Section 772.030 provides, in pertinent part: "(a) If a mining rights lease, including a community lease, exists for the production of oil, gas, or other hydrocarbons, and a right of entry or occupation provided by the lease encumbers all or part of the surface or surface zone of the leasehold lands, any person who owns a fee interest in the surface of the leasehold lands may bring an action in the superior court to terminate the right of entry or occupation as to all or some described portion of the surface and surface zone of the leasehold lands in which the person owns an interest."

The conditions upon which a right of entry may be terminated are provided in section 772.040: "The court may render a judgment terminating the lessee's right of entry or occupation of the surface and surface zone, subject to such conditions as the court deems fair and equitable, if the evidence shows each of the following:

"(a) The document that created the leasehold interest was originally executed more than 20 years prior to filing the action under this article regardless of any amendments to the document. However, if any amendment was entered into expressly for the purpose of waiving, limiting, or rearranging surface rights of entry and occupation by lessee, the 20-year period shall be computed as if the document were originally executed on the date of execution of the amendment.

"(b) The subject land is not presently occupied by any of the following:

"(1) A producing oil or gas well or well bore.

"(2) A well or well bore being utilized for injection of water, gas, or other substance into geologic substrata as an aid to oil or gas production or to ameliorating subsidence.

"(3) A well or well bore being utilized for the disposal injection of waste oil well

It may well be that plaintiffs' position with respect to this point is well taken. However, our decision need not rest on a conclusion that absolutely no right of substance will be impaired.

■ It is settled that the constitutional prohibitions against impairment of contractual obligations are not absolute but, rather, that contract rights, as all other property rights, may be altered by legislation validly enacted under the state's police power. (*Home Bldg. & L. Assn.* v. *Blaisdell* (1934) 290 U.S. 398, 428, 434-436 [78 L.Ed. 413, 423, 426-428, 54 S.Ct. 231]; *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 305 [152 Cal.Rptr. 903, 591 P.2d 1]; see *Allied Structural Steel Co.* v. *Spannaus, supra*, 438 U.S. at p. 241 [57 L.Ed.2d at p. 734].) The appropriate inquiry is whether the alteration of contractual rights and obligations effected by the statute, the impairment, is "sufficiently necessary to the public welfare as to justify the impairment." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra*, 23 Cal.3d 296; see *Olson* v. *Cory* (1980) 27 Cal.3d 532, 539 [164 Cal.Rptr. 217, 609 P.2d 991].)

Probably the single most important factor to be considered in determining whether a particular impairment is constitutionally permissible is the nature and extent of the impairment. "The severity of the impairment measures the height of the hurdle the state legislation must clear." (*Allied Structural Steel Co.* v. *Spannaus, supra*, 438 U.S. at p. 245 [57 L.Ed.2d at pp. 736-737]; see *Olson* v. *Cory, supra*, 27 Cal.3d at p. 539; *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra*, 23 Cal.3d at p. 309.) Other important factors to be considered are the nature, importance and urgency of the interest to be served by the challenged legislation; and whether the legislation was appropriately tailored and limited to the situation necessitating its enactment. (See *Allied Structural Steel Co.* v. *Spannaus, supra*, 438

---

brine and byproducts.

"(4) A well or well bore being utilized for the production of water for use in oil field injection, waterflood, and pressure maintenance programs.

"(c) Termination of the right of entry or occupation within the subject land in the manner requested by the plaintiff, or subject to such conditions as the court may impose pursuant to this section, will not significantly interfere with the right of the lessee, under the lease, to continue to conduct operations for the continued production of oil from leasehold strata beneath the surface zone in a practical and economic manner, utilizing such production techniques as will be appropriate to the leasehold area, consistent with good oilfield practice, and to gather, transport, and market the oil."

U.S. at pp. 242-244 [57 L.Ed.2d at pp. 734-736]; *United States Trust Co.* v. *New Jersey* (1977) 431 U.S. 1, 22 [52 L.Ed.2d 92, 109-110, 97 S.Ct. 1505]; *Olson* v. *Cory, supra,* 27 Cal.3d 532]; *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at pp. 305-308.)

Weighing these factors in the case at bench, we have no hesitation in concluding that the statute does not unconstitutionally impair the obligation of contracts. The impairment, if any, is small indeed. As previously observed, termination of the lessee's right of entry or occupancy of the surface or surface zone is permitted only upon a showing that such termination "will not significantly interfere with the right of the lessee, under the lease, to continue to conduct operations for the continued production of oil from leasehold strata beneath the surface zone in a practical and economic manner...and to gather, transport and market the oil." (§ 772.040, subd. (c) [see fn. 4, *ante*]; *Butcher* v. *Okmar Oil Co.* (1977) 65 Cal.App.3d 972, 974-975 [135 Cal.Rptr. 713].) To insure that no significant interference results, the court is expressly empowered by the statute to impose such conditions on the termination as it deems fair and equitable (§ 772.040), to provide for surface and surface zone easements that the lessee may continue to enjoy (§ 772.050, subd. (a)) and to condition such termination "upon the relocation of pipelines, roadways, equipment, or lease facilities in such manner as will most effectively free the subject land for surface use while safeguarding continued oil and gas operations in a practical and economic manner," all at the plaintiff's expense. (§ 772.050, subd. (b).)

In contrast, the interest of the state to be served by enactment of the legislation is substantial and significant. It was expressly identified in the original legislation: "[T]he orderly growth and development of urban areas remains needlessly fallow and unproductive and is a source of economic and social blight on surrounding areas." (Stats. 1971, ch. 1586, § 3, p. 3202 [see fn. 2, *ante*].)

It is not contended by defendants that the statute is not sufficiently tailored or limited to remedying the problem necessitating its enactment.

*Substantive Due Process*

Our discussion of defendants' impairment of contracts contention also effectively disposes of their contention that the statute denies them substantive due process. The contention is that defendants' rights under the

oil and gas lease executed in 1926 are vested and that retroactive application of the statute alters or abrogates those vested rights in violation of the due process clauses in the federal and state Constitutions.

■ However, not every alteration or abrogation of a vested right violates the due process clauses. Property rights are subject to reasonable regulation by legislation validly enacted under the police power (*In re Marriage of Bouquet, supra*, 16 Cal.3d at p. 592; *Addison* v. *Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391]), and the criteria for determining whether the impairment of a vested property interest by legislation enacted under the police power violates substantive due process are essentially the same as those considered in determining whether state legislation impairing contract rights violates the constitutional prohibitions against impairment of contracts. (*San Diego White Truck Co.* v. *Swift* (1979) 96 Cal.App. 3d 88, 93 [157 Cal.Rptr. 745]; see *In re Marriage of Bouquet, supra*, 16 Cal.3d 583; Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation* (1960) 73 Harv. L.Rev. 692, 692-697.)

As already concluded, the significant interest of the state in encouraging the proper development and utilization of fallow land in highly populated urban areas and of eliminating attendant social and economic blight greatly outweighs the circumscribed interference with defendants' vested rights permitted by the statute.

*Out-of-state Decisions*

In support of their contentions both as to due process and impairment of contracts defendants cite a number of sister-state decisions. They are either not in point at all or fundamentally distinguishable.

*Trustees of Tufts College* v. *Triple R. Ranch, Inc.* (Fla. 1973) 275 So.2d 521, is not really in point. The statute considered there authorized the owner of property subject to a right of entry for the purpose of mining, drilling, exploring or developing minerals to bring an action to terminate the right of entry if during the 20-year period after the right was created, such right had not been exercised. The questions before the court were whether the statute should be interpreted as applying retrospectively or prospectively only and, if retrospectively, whether the legislation was constitutional. The court interpreted the statute as applying prospectively only and did not reach the question of its constitutionality. In concluding the court did say: "[W]e feel compelled to point out merely by obiter dicta that this statutory provision would

have been more acceptable had it provided for a savings clause setting out a reasonable time and a reasonable method by which the holders of such rights...could reassert and refile their claims of reservation...." (*Id.*, at p. 528.) However, the Florida statute was far different from the statute at hand in respect to the nature and extent of the interference with existing rights. It permitted absolute and unconditional termination, whereas the statute with which we deal authorizes termination of the right of entry or occupation of the surface or surface zones only if that results in no substantial interference with the rights of the lessee to continue production, collection, transportation and marketing and authorizes the court to impose conditions and qualifications to insure that there will be no significant interference with the lessee's operations. (§§ 772.040, 772.050 [see fns. 3 and 4, *ante*].)

Neither does the decision in *Chicago & N. W. Transp. Co.* v. *Pedersen* (1977) 80 Wis.2d 566 [259 N.W.2d 316], aid defendants' cause. The statute involved in that case basically required the payment of an annual registration fee to keep the lessee's rights in force and provided that if the annual fee were not paid then all rights under the lease reverted to the fee owner of the surface. The provisions of the act were automatic and unconditional; no notice was required to be given to the lessee; and no hearing of any kind was provided. The court held the act unconstitutional because its enforcement provisions denied procedural and substantive due process and were not severable from the other portions of the act. The court did also indicate that the other portions of the act might well be invalid on substantive due process grounds. However, here again, the statute involved was not limited to the termination of rights only if that would result in no significant interference with the rights of the lessee to produce, gather, transport and market the minerals under the lease. Further, the public necessity for the legislation relied on by the Attorney General in the *Chicago* case was only the "necessity of clearing up uncertainty over mineral right ownership...." (*Id.*, at p. 320.)

In *Bickel* v. *Fairchild* (1978) 83 Mich.App. 467 [268 N.W.2d 881], Michigan's Dormant Mineral Act provided for the absolute and automatic termination of the lessee's interest under an oil and gas lease if the lessee failed to take certain specified affirmative steps relating to the land during any 20-year period. In holding the statute unconstitutional the court applied the four-factor test of *Blaisdell.* It focused on the fact that the "statute would deprive known property owners of their sub-surface rights without notice, hearing or compensation....The relief granted could reasonably have required some notice to known

interest owners. The relief was not temporary or for a limited time.... [¶]...Without any grave emergency situation requiring such drastic action, the statute would take property obtained by contract from [the leasehold owner] and give it to others." (*Id.*, at p. 883.)

Similarly, in *Wheelock* v. *Heath* (1978) 201 Neb. 835 [272 N.W.2d 768], the Nebraska Supreme Court held that legislation which declared that mineral rights were abandoned unless the mineral interest owner had exercised ownership rights was unconstitutional. Relying on *Bickel*, the court stated: "In the case before us, the statute deprives known property owners of their subsurface rights without notice, hearing, or compensation. The statute was passed in 1967.... [¶] A limited [2 years] statute of limitations was provided.... In all actions filed after October 23, 1969, if no affirmative action had been taken within 23 years, the severed interest is to be considered abandoned. The owner does not have any remedy." (*Id.*, at pp. 773-774.)

Unlike the statutes in *Bickel* and *Wheelock*, the California statute does not provide for the unconditional, automatic termination of the right of entry or occupancy of the surface without notice or hearing. The fee owner must institute a lawsuit to terminate the lessee's rights; the lessee must be served with process and is afforded an opportunity to litigate all matters in issue. A judgment terminating the lessee's right of entry or occupancy of the surface or surface zone may be rendered only if that will not significantly interfere with the lessee's rights to produce, gather, transport and market oil from the strata beneath the surface zone, and to this end, the court is given broad powers to impose conditions and provide for surface and surface zone easements. (§§ 772.040, 772.050 [see fns. 3 and 4, *ante.*)

### Disposition

The California statute is not unconstitutional on either of the bases urged. The judgment of dismissal is reversed.

Morris, J., and Garst, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.