[No. D003687. Fourth Dist., Div. One. Jan. 16, 1987.]

COX CABLE SAN DIEGO, INC., Plaintiff and Respondent, v. CITY OF SAN DIEGO, Defendant and Appellant.

956

**COUNSEL**

John W. Witt, City Attorney, Ronald L. Johnson, Senior Chief Deputy City Attorney, Eugene P. Gordon, Chief Deputy City Attorney, Alejandro Matuk and Leslie J. Girard, Deputy City Attorneys, for Defendant and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Leonard W. Pollard II, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Appellant.

Ferris, Brennan & Britton, Christopher Q. Britton, Alfred G. Ferris and Tamara K. Fogg for Plaintiff and Respondent.

OPINION

**BUTLER, J.**—Plaintiff Cox Cable San Diego, Inc. (Cox), claiming Government Code[1] section 53066.1, popularly called the Cable Rate Deregulation Act (the act), preempts local rate regulation of cable television, brought a declaratory relief action against the defendant City of San Diego (City) to determine its rights and duties under the 1979 franchise agreement with City. The court granted Cox's motion for summary judgment and entered judgment in its favor and against City. City appeals the judgment. We affirm.

I

■ We state rules that guide appellate review of grant of summary judgment where the facts are not in dispute. In such case, the issue is one of law, not fact, and the appellate court is free to draw its own conclusions of law from the undisputed facts. (Code Civ. Proc., § 437c; *Jongepier* v. *Lopez* (1983) 142 Cal.App.3d 535, 538 [191 Cal.Rptr. 535].) When the construction and application of a statute or the interpretation of a written instrument is involved (*Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr. 44]; *King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 356 [175 Cal.Rptr. 226]), the duty of the appellate court "is to reexamine the instruments and to reach an independent determination of their construction and effect [citations]." (*Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 591 [177 Cal.Rptr. 268].)

II

The facts here are undisputed. City is a municipal corporation and charter city organized under the Constitution and laws of the State of California. (Cal. Const., art. XI, § 5.) On January 2, 1979, City passed ordinance number 12543NS, effective February 2, 1979, granting Cox a cable television franchise. The franchise gives Cox the right to use the "public streets, highways

---

[1]All statutory references are to the Government Code unless otherwise specified.

and alleyways located in the City [of San Diego] for maintenance, installation and operation of [Cox's] cable television system for a minimum period of thirty (30) and a maximum period of fifty (50) years." In addition to providing a formula for franchise fees to City, the ordinance in section 15 permits City to regulate the rates Cox charges subscribers for cable television services.

On December 28, 1984, Cox gave City written notice under the act Cox intended to deregulate its subscriber rates and would "be exempt from control by [City] as to rates, charges and rate structures." (§ 53066.1, subd. (a).) City acknowledged Cox's notice January 11, 1985, and asserted as a charter city it was not bound by the provisions of the act; it would continue to regulate rates under the franchise. City warned Cox any attempt by Cox to deregulate rates would be considered a violation of the franchise which might result in legal action.

Representatives of Cox and City met February 14, 1985, to try to resolve the dispute. When such was not resolved, Cox filed its complaint for declaratory relief February 28, 1985, to determine the validity of the act. City answered April 2, 1985.

Cox sought and was granted an order shortening time for filing a summary judgment motion. In addition to Cox's points and authorities and declarations in support of the motion and City's opposition points and authorities, the County of San Diego (County) filed opposition as amicus curiae. Neither City nor County submitted declarations in opposition.

The motion was heard June 5, 1985, and judgment was entered in favor of Cox. The court specifically found:

"1. The development and regulation of cable television is a matter of statewide concern.

"2. On its face, California Government Code section 53066.1 is constitutional.

"3. California Government Code section 53066.1 applies to a chartered city.

"4. The State of California has preempted the regulation of cable television to the fullest possible extent by means of California Government Code section 53066.1.

"5. The attempt by the City to regulate cable television is a governmental function, not a proprietary function.

. "6. California Government Code section 53066.1 is constitutional as applied to the City of San Diego.

"7. The City of San Diego does not have standing to claim that California Government Code section 53066.1 impairs its franchise with Cox.

"8. The City of San Diego is a political subdivision of the state and, therefore, does not have standing to raise the defense of impairment of contract.

"9. The objections of the City of San Diego to evidence presented by Cox Cable San Diego, Inc. in support of its motion for summary judgment are overruled."

On appeal, City challenges the court's grant of summary judgment, contending the act is an unconstitutional attempt by the state Legislature to preempt a municipal affair, the act constitutes an unconstitutional impairment of contractual rights under the franchise, and the trial court erred in overruling City's evidentiary objections to the declarations filed in support of the summary judgment motion. County has again filed an amicus curiae brief in support of City's impairment of contract argument.

We shall conclude the act manifests a statewide concern and intent to occupy and exempt cable rate regulation by local government entities under certain conditions which have been satisfied here by Cox, the act does not unconstitutionally impair the contractual rights of the parties, and the trial court properly overruled objections to Cox's supporting declarations.

### III

■ The California Constitution provides a chartered city has autonomy over its "municipal affairs." (Cal. Const., art. XI, § 5, subd. (a).) Thus, a chartered city's ordinances which deal with purely municipal affairs are valid even if they conflict with general laws.

"As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation (the preemption doctrine). [Citations.]" (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].) ■ Although cities may legislate upon matters of statewide concern, in the event of conflict with the state law, state law controls. (*Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 369-370 [125 Cal.Rptr. 482, 147 A.L.R. 515].)

■ Since our Constitution has never defined what constitutes a municipal affair, the courts must decide on a case-by-case basis whether the subject matter is of municipal or statewide concern. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158].) In deciding this question, it is well settled the courts will accord great weight to the Legislature's evaluation of the question. (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56 at pp. 61-63.) "[T]he purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation [citation], and ... factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern." (*Id.* at p. 63.) Moreover, what may at one time have been a matter of local concern may later become a matter of statewide concern subject to control by the general laws of the state. (*Pac. Tel. & Tel. Co.* v. *City & County of S. F.* (1959) 51 Cal.2d 766, 771 [336 P.2d 514]; see Sato, *"Municipal Affairs" in California* (1972) 60 Cal.L.Rev. 1055.)

■ Whether the Legislature intended to preempt the particular field to preclude local regulation is answered by looking to the whole purpose and scope of the legislative scheme. (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859 [76 Cal.Rptr. 642, 452 P.2d 930]; *In re Lane* (1962) 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897].) "The task is ... to determine whether the state has occupied a relevant field—an area of legislation which includes the subject of the local legislation, and is sufficiently logically related so that a court, or a local legislative body, can detect a patterned approach to the subject." (*Galvan* v. *Superior Court, supra,* 70 Cal.2d at p. 862.)

Generally, the doctrine of state preemption will not apply unless: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." (*In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], overruled on other grounds in *Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56 at p. 63, fn. 6.)

■ "The issue of 'paramount state concern' also involves the question 'whether substantial, geographic, economic, ecological or other distinctions are persuasive of the need for local control, and whether local needs have been adequately recognized and comprehensively dealt with at the state level.' [Citation.]" *Galvan* v. *Superior Court, supra,* 70 Cal.2d 851 at pp. 863-864.)

Any fair, reasonable and substantial doubt whether a matter is a municipal affair or broader state concern must be resolved in favor of the legislative authority of the state. (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; *Younger* v. *Berkeley City Council* (1975) 45 Cal.App.3d 825, 830 [119 Cal.Rptr. 830].) With these authorities in mind, we review the conflicting statute and ordinance.

IV

In January 1979, City granted Cox a franchise under sections 103, 103.1, 104 and 105 of its charter.[2] While the franchise does not specifically state the grant is also pursuant to Government Code section 53066, such may be inferred.

Government Code section 53066[3] provides in pertinent part: "*Any city or county or city and county in the State of California may, pursuant to such provisions as may be prescribed by its governing body, authorize by franchise or license the construction of a community antenna television system.*

[2]The charter provisions read in part as follows: "SECTION 103. FRANCHISES. [¶] The Council shall have power to grant to any person, firm or corporation, franchises, and all renewals, extensions and amendments thereof, for the use of any public property under the jurisdiction of the City....

"SECTION 103.1. REGULATION OF PUBLIC UTILITIES. [¶] No person, firm or corporation shall establish and operate works for supplying the inhabitants of The City of San Diego with light, water, power, heat, transportation, telephone service, or other means of communication, or establish and carry on any business within said City which is designed to or does furnish services of a public utility nature to the inhabitants of said City, without the consent of said City manifested by ordinance of the Council. The Council shall have power to provide reasonable terms and conditions under which such businesses may be carried on and conducted within The City of San Diego.

". . . . . . . . . . . . . . . . . .

"SECTION 104. TERM AND PLAN OF PURCHASE. [¶] .... The Council shall certify to the existence of ... franchises and shall recognize them for periods not longer than the date of expiration on each. The Manager shall keep a public record of all franchises, leases or permits granted for the use of the public property of the City. The Council may fix the term of each new franchise in accordance with the laws of the State of California, provided that any franchise may be terminated by ordinance whenever the City shall determine to acquire by condemnation or otherwise the property of any utility necessary for the welfare of the City, such termination to be effective upon and not before payment of the purchase price for the property to be acquired....

"SECTION 105. RIGHT OF REGULATION. [¶] Plenary control over all primary and secondary uses of its streets and other public places is vested in the City. Franchises may be granted upon such terms, conditions, restrictions or limitations as may be prescribed by ordinance. Every ordinance granting a franchise shall provide that the grantee therein named, as consideration for such grant, shall pay compensation to the City in an amount and in the manner set forth in said ordinance."

[3]Section 53066 was first enacted in 1963 in chapter 2087, section 1, page 4351. It was subsequently amended by Statutes 1968, chapter 172, section 1, page 396, and Statutes 1983, chapter 1142, section 1, pages 4317-4318.

In connection therewith, the governing body may prescribe such rules and regulations as it deems advisable to protect the individual subscribers to the services of such community antenna television system. The award of the franchise or license may be made on the basis of quality of service, rates to the subscriber, income to the city, county or city and county, experience and financial responsibility of the applicant plus any other consideration that will safeguard the local public interest, rather than a cash auction bid. . . . *Any* cable television franchise or license awarded by *a city* or county or city and county pursuant to this section may authorize the grantee thereof *to place* wires, conduits and appurtenances for the community antenna television system along or across such public streets, highways, alleys, public properties, or public easements of said city or county or city and county. Public easements, as used in this section, shall include but shall not be limited to any easement created by dedication to the city or county or city and county for public utility purposes or any other purpose whatsoever." (Italics added.)

■ Section 53066 is specific legislation covering the development and regulation of cable television systems within California and does not distinguish between general law counties and cities and chartered counties and cities. City thus falls under the class of entities covered by section 53066.

In 1979, the Legislature added section 53066.1 (Stats. 1979, ch. 1086, § 1, pp. 3920-3924) prescribing terms and conditions under which a cable television franchisee could elect to be exempt from a franchisor's regulation or control of rates, charges and rate structures or to adjust its rates within certain time limits. Section 53066.1 was amended in 1982 (Stats. 1982, ch. 679, § 2, pp. 2770-2779), repealed (Stats. 1982, ch. 1256, § 1, p. 4610), and again added (Stats. 1982, ch. 1256, § 3, pp. 4613-4622), revising the conditions enabling a franchisee to elect to continue to be exempt from local rate regulation or to unilaterally adjust its rates. In 1983, the Legislature again amended this section to add more stringent criteria with which a franchisee must comply before electing to deregulate. (Stats. 1983, ch. 1142, § 2, pp. 4318-4327.)

In an investigation conducted before the August 30, 1982, amendment to the act, the Legislature found that: "(1) The cable television industry is an important news, entertainment, and information service whose economic health and continued growth and development are in the best interests of the people of the State of California and are matters of statewide concern.

"(2) Cable television is an important source of news, information, culture, and ideas, entitled to the full protections afforded by the First Amendment to the United States Constitution and subdivision (a) of Section 2 of Article I of the California Constitution.

"(3) The cable television industry operates in a competitive multimedia environment, and within such an environment the cable television consumer is best served when the cable television system is free to respond to its consumers without unreasonable governmental restraint.

"(4) The expansion of cable television channel and service capacity and the provision of community service programming is in the best interests of the people of the State of California.

"(5) The regulation of subscriber rates, charges, or rate structures established by a cable television system is a matter of statewide concern; accordingly, the state hereby preempts under the terms and conditions prescribed by this act any control or regulation of subscriber rates, charges, or rate structures heretofore or hereinafter established by any franchisor . . . ." (Stats. 1982, ch. 679, p. 2770.)

■ Under the current rendition of section 53066.1, subdivision (m)(5), "franchise" is defined as "any franchise or license granted pursuant to Section 53066, or any other authority, for the construction or operation of a cable television system." Under subdivision (m)(6), "franchisor" means "any city, county, or city and county, including any chartered city, county or city and county, granting a franchise." Thus, the Legislature has specifically shown its intent to include City within its scheme of cable television regulations.

■ In subdivision (p), the Legislature recognizes the statewide concern of cable television regulation and "finds and directs that the exercise of the police power of the State of California concerning cable television should, except as otherwise directed by the Legislature, remain in the cities, counties, or cities and counties . . . ." Subdivision (p) also sanctions the right of local entities to contract with cable television companies, subject to the proper limits of the entities' police power.

Subdivision (q) explicitly states section 53066.1 "shall establish the state's preemption . . . of the control and regulation of cable television subscriber rates, charges, and rate structures heretofore or hereinafter established by any franchisor pursuant to Section 53066, to the extent that such control or regulation is inconsistent with this section." With this subdivision, the Legislature plainly expresses its intent to exclude the field of cable television regulation except in areas it specifically grants to local governments like City.

Other sections of the act set forth specific procedures and remedies open to local government, and for the benefit of individual subscribers, to contest deregulation, and police violations of noncompliance by cable companies

with any requirements for deregulation or provisions of the franchise. For example, subdivision (g)(2) provides a remedy, at the franchisor's option, to compel a monthly refund credit to subscribers if a franchisee is found not in compliance when it elects to deregulate and no good cause exists for failure to so comply. Additionally, subdivision (n)(1), (2) and (3) outline mechanisms and monetary penalties for local legislative bodies to use in the absence of like provisions in the franchise, for individual consumer complaints and material franchise term violations.

 Our review of the act clearly indicates the subject matter of cable television systems is of statewide concern and has been fully covered by general state law in California except as to areas it has delegated to local government. (§ 53066.1; see *City of Lafayette* v. *American Television & Communication Corp.* (1979) 98 Cal.App.3d 27, 32 [159 Cal.Rptr. 271].) This conclusion is further supported by the overall regulation of cable communications by federal law.

On October 30, 1984, Congress enacted the Cable Communications Policy Act of 1984 (Cable Act) to establish a national policy covering cable communications and to both encourage the growth and development of cable systems and assure such systems are responsive to the needs and interests of the local communities. (47 U.S.C. § 521, added Oct. 30, 1984, Pub.L. No. 98-549, § 2, 98 Stat. 2780.) The Cable Act applies to any governmental entity empowered to grant a franchise for basic cable service (47 U.S.C. § 522(9)) and prohibits regulation of rates for the provision of cable service "except to the extent provided under this section." (47 U.S.C. § 543(a).) The Cable Act allows franchising authorities to regulate rates until the end of two years after the Cable Act's effective date (47 U.S.C. § 543(c)), which would be December 30, 1986, unless such right to regulate rates has been preempted by state law in existence on December 30, 1984, the effective date of the Cable Act. (47 U.S.C. § 543(g).)[4] Section 53066.1 was in existence on December 30, 1984. Federal law thus sanctions the state Legislature's preemption of cable rate regulation. Section 53066.1 is therefore fully operative until at least December 30, 1986, and is operative under its own terms until 1991 if its provisions concerning rate deregulation do not conflict with federal regulations. (§ 53066.1, subd. (r).)

---

[4]We note the Federal Communications Commission has adopted regulations for rate control which will supersede any state or local laws which interfere with or conflict with the federal regulations on December 30, 1986. (U.S. Const., art. VI, cl. 2; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 10 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; see 47 C.F.R. § 76.33, ch. 1 (Oct. 1, 1985), as amended by 51 Fed.Reg. 21772 (June 16, 1986).) The effect federal control will have over the parties to and subject matter of this lawsuit is not determined at this time. We merely reference the Cable Act as evidence of the whole scheme to regulate the cable television industry. After December 30, 1986, the state and local entities arguably will only be able to legislate in areas the federal law does not preempt. We do not speculate whether state or local agencies will be deemed to be preempted under the Cable Act.

■ A review of the franchise agreement between Cox and City also bolsters Cox's position the act involves a matter of statewide concern and preempts the franchise ordinance rate provision. Section 2(g) of the franchise/ordinance provides: "None of the provisions of this Ordinance shall deprive [Cox] of any rights, privileges or protections afforded under the express provisions of the Charter and ordinances of the City of San Diego and Constitution and laws of the State of California or the United States of America." Section 27 of the franchise/ordinance further states: "Each section, part, term and/or provision of this agreement shall be considered severable, and if, for any reason, any section, part, term and/or provision herein is determined to be invalid and contrary to, or in conflict with, any existing or future law or regulation, such shall not impair the operation or affect the remaining portions, sections, parts, and/or provisions of this agreement, and the latter will continue to be given full force and effect and bind the parties hereto; and said invalid sections, parts, terms and/or provisions shall be deemed not to be a part of this agreement." These sections suggest awareness of the parties that rights and obligations under the franchise might be later deemed preempted by state or federal legislation or regulation.

■ At the time the franchise agreement was made, section 53066 allowed City to regulate subscriber rates under the franchise/ordinance. When section 53066.1 was enacted, the Legislature expressly provided Cox with the right to deregulate its rates if it met certain conditions. City does not contest the fact Cox has met these conditions.

Given the Legislature's patterned approach to cable television development, which recognizes the geographical need to have local authority oversee the development of and services provided by cable companies, the nationwide concern of cable communications, and the parties' awareness state or federal law could in the future preempt the parties' rights and obligations under the franchise agreement, we find the act constitutionally legislates a matter of statewide concern and its cable rate deregulation provisions constitutionally preempt City's right to regulate Cox's subscriber rates.

V

■ The granting by City of a cable franchise is a legislative act (*Orange County Cable Communications Co.* v. *City of San Clemente* (1976) 59 Cal.App.3d 165, 171 [130 Cal.Rptr. 429]), and establishes a contractual relationship between City and Cox (*City of Lafayette* v. *American Television & Communication Corp., supra,* 98 Cal.App.3d 27 at p. 31). City complains the application of section 53066.1 unconstitutionally impairs the obligation of that contract.

■ Cox correctly asserts, and the trial court correctly found, City, as a political subdivision of the state, a municipal corporation, acting in its legislative, governmental capacity, has no standing to raise the defense of impairment of contract in opposition to acts of the state Legislature. (*City of Trenton* v. *State of New Jersey* (1923) 262 U.S. 182 [67 L.Ed. 937, 43 S.Ct. 534, 29 A.L.R. 1471]; *City of Los Angeles* v. *City of Artesia* (1977) 73 Cal.App.3d 450, 457 [140 Cal.Rptr. 684].) Whether City has standing to invoke the defense of impairment of the obligation of contracts in a representative capacity on behalf of its citizens under a third party beneficiary theory need not be addressed, as City did not allege such relationship in its answer and by our determination the act constitutionally preempts the local regulation of cable rates, we have in effect determined the act does not unconstitutionally impair the contractual rights of the parties.

■ It is well settled the constitutional prohibition against impairment of contractual obligations is not absolute; "contract rights, as all other property rights, may be altered by legislation validly enacted under the states' police power." (*Donlan* v. *Weaver* (1981) 118 Cal.App.3d 675, 682 [173 Cal.Rptr. 566].) The question becomes whether the change in contractual rights and obligations effected by the statute, the impairment, is " ' "sufficiently necessary to the public welfare as to justify the impairment." ' [Citations.]" (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371]; see *Olson* v. *Cory* (1980) 27 Cal.3d 532, 539 [178 Cal.Rptr. 568, 636 P.2d 532].) And "the single most important factor to be considered in determining whether a particular impairment is constitutionally permissible is the nature and extent of the impairment." (*Donlan* v. *Weaver, supra,* 118 Cal.App.3d at p. 682.) Other factors to consider are the nature and importance of the interest served by the challenged legislation and whether the legislation is "appropriately tailored and limited" to the purpose for its enactment. (*Ibid.*)

■ Weighing these factors here, we conclude section 53066.1 does not unconstitutionally impair the obligation of contracts; any impairment is minimal and a proper exercise by the state of its police power in an industry affected with a public interest.

The reasonable governmental regulation of rates and tariffs in industries affected with the public welfare has long been established as a proper exercise of the police power. (*Law* v. *Railroad Commission* (1921) 184 Cal. 737, 739 [195 P. 423, 14 A.L.R. 249]; *Ray* v. *Parker* (1940) 15 Cal.2d 275, 280-281 [101 P.2d 665].) Cable television has been determined to be an industry affected with the public welfare. (See 66 Ops.Cal.Atty.Gen. 418 (1983); 54 Ops.Cal.Atty.Gen. 135 (1971).) For the same reasons section 53066.1 preempts City's conflicting rate regulation provision, section 53066.1 serves substantially and significantly the interest of the state.

■ Contrary to City's assertion it "cannot even contract with a private profit making corporation to ensure the public health and welfare" if the judgment is upheld, the impairment here does not prevent City from contracting or franchising with Cox to provide the services of cable television to its local citizens. The main thrust of the existing franchise, to allow Cox "to use the public streets, other public rights of way or public places in City, to engage in the business of operating a Cable Television System [and to] construct, maintain and operate wires, cables, poles, conduits, manholes and other television conductors and equipment necessary for the maintenance and operation of a Cable Television System" (San Diego City Ord. No. 12543NS, § 5, p. 9) in return for franchise fees ranging from 2 percent to 5 percent of Cox's gross revenues from operating the cable television distribution system, is not impaired. The Legislature gives City free rein to use its police power to regulate Cox in all areas except rates once Cox has qualified to deregulate under the act. The provision concerning rates under the franchise/ordinance here is fully severable from the remaining contractual rights and obligations of City and Cox. Consumer protection remains very much within City's control. The act is thus sufficiently tailored or limited to ensure the free enterprise, economic growth of the cable television industry and at the same time protect the individual consumers and local interests.

## VI

City raises one last issue. It contends the trial court erred in overruling its evidentiary objections to the declarations filed in support of Cox's summary judgment motion.

■ City merely cites general points of law regarding sufficient, competent, admissible declarations and does not identify which declaration is objectionable or how the trial court erred in overruling the objections below. City has therefore not met its burden in presenting us with a reviewable issue.[5]

■ On appeal, a judgment of the lower court is presumed valid. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) A party must present argument and authority on each point challenged. If an argument is not presented, it will not be considered. (*County of Sacramento* v. *Lackner* (1979) 97 Cal.App.3d 576, 591 [159 Cal.Rptr. 1].)

---

[5]Because the parties agreed there was no issue of fact involved, and City does not now contest the facts as presented by Cox, the relevance of the declarations in determining the validity of the grant of summary judgment as a matter of law is questioned.

## VII

The judgment of the trial court entered upon the grant of summary judgment is affirmed in its entirety.

Wiener, Acting P. J., and Work, J., concurred.