Filed 12/8/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT OTTO CARTER, JR.,<br><br>    Defendant and Appellant. | D082219<br><br><br><br>(Super. Ct. No. BAF1501107) |

APPEAL from an order of the Superior Court of Riverside County, Randall S. Stamen, Judge.  Reversed and remanded.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel, Warren J. Williams and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

Robert Carter, Jr. appeals the denial of his request for a full resentencing under recently enacted Penal Code section 1172.75.[1]  Although

---

[1]    All further statutory references are to the Penal Code unless otherwise noted.

the trial court recalled Carter for resentencing under section 1172.75 and struck his one-year prior prison term from his sentence, the court declined to conduct a full resentencing under the new law. The court found that it did not have the authority to do so because Carter was originally sentenced pursuant to a plea agreement. Carter contends that this was in error. We agree that section 1172.75 required the trial court to conduct a full resentencing, and that the People are not entitled to withdraw their assent to the plea bargain if the trial court further reduces Carter's sentence on resentencing. Accordingly, we reverse and remand the case to the trial court for a full resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2015, the People filed a complaint alleging that Carter committed two counts of attempted murder (§§ 664, 187, subd. (a)) and one count of assault with a deadly weapon (§ 245, subd. (a)), specifically, a machete. The People further alleged that Carter served a prior prison term (§ 667.5, subd. (b)) and was convicted of a strike prior (§§ 667, subds. (c) and (e)(1), 1170.12, subd. (c)(1)).

In April 2016, the complaint was amended to add a second count of assault with a deadly weapon (§ 245, subd. (a)) and a great bodily injury allegation (§ 12022.7, subd. (a)). At that time, Carter pled guilty to both counts of assault with a deadly weapon and admitted the great bodily injury allegation, the prison prior, and the strike prior. The parties stipulated to a 12-year sentence under the plea agreement, calculated as follows: for the first count of assault with a deadly weapon, the middle term of three years, doubled to six years due to the strike prior; for the second count of assault with a deadly weapon, one-third the middle term of three years (one year), doubled to two years due to the strike prior, run consecutively; for the great

2

bodily injury enhancement, an additional and consecutive term of three years; and for the prison-prior enhancement, an additional and consecutive term of one year. In May 2016, the trial court accepted and imposed the stipulated sentence.

In October 2022, the California Department of Corrections and Rehabilitation referred Carter's case to the trial court for recall and resentencing under newly enacted section 1172.75, subdivision (b). The People filed an opposition to resentencing under section 1172.75, arguing that although the court had to strike the one-year prison prior from Carter's sentence, it had no discretion to conduct a full resentencing because there had been a stipulated sentence per the parties' plea agreement. Carter filed a response to the People's opposition, arguing that a full resentencing was mandatory under section 1172.75 and the court was required to apply all new sentencing laws that reduce sentences or provide for judicial discretion. Carter also filed a motion to strike his strike prior (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497), which the People opposed.

In March 2023, after holding a hearing, the trial court issued a written resentencing order. The court concluded that Carter's prison prior under section 667.5, subdivision (b) was invalid and ordered it stricken. The court acknowledged that Carter "ha[d] taken advantage of the rehabilitative aspects of incarceration, earning several certificates of completion and letters of appreciation," and stated that if Carter's "conviction and sentencing were not the product of an accepted plea bargain, the court could take [his] achievements into account at a full resentencing hearing." However, the court agreed with the People that it did not have the authority to modify the negotiated sentence beyond striking the prison prior. The court found that to do so where the "defendant's sentence was the product of a plea bargain

3

would divest the People of the benefit of their bargain." For the same reason, the court concluded it did not have the authority to strike Carter's strike prior, and it therefore denied his *Romero* motion.

At the resentencing hearing, the court ordered Carter's prison prior stricken, stated that all other terms of his sentence would remain intact, and sentenced him to 11 years in state prison.

Carter timely filed a notice of appeal.

## DISCUSSION

The parties agree that the trial court properly struck Carter's prison prior from his sentence. The only issues before us are (1) whether the court erred in finding that it did not have discretion under section 1172.75 to fully resentence Carter because his sentence was imposed pursuant to a plea agreement, and (2) if so, whether the prosecution may withdraw its assent to the plea bargain if the trial court further reduces Carter's sentence on resentencing.

A. *Governing Law*

Before January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a prior prison term and had not remained free of custody for at least five years. (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379–380 (*Burgess*).) Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136) amended section 667.5 by limiting the enhancement to only prior prison terms served for sexually violent offenses. (Stats. 2019, ch. 590, § 1.) Enhancements based on prior prison terms served for other offenses became legally invalid. (*Burgess*, at pp. 379–380.)

4

In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483), which, among other things, made the changes implemented by Senate Bill 136 retroactive. (*Burgess, supra*, 86 Cal.App.5th at p. 380.) Senate Bill 483 added former section 1171.1, later renumbered as section 1172.75 (Stats. 2022, ch. 58, § 12), to the Penal Code.[2] (Stats. 2021, ch. 728, §§ 1, 3.) Penal Code section 1172.75 provides that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (Pen. Code, § 1172.75, subd. (a).) It further provides that if a currently incarcerated defendant is serving a sentence that includes such a legally invalid enhancement, "the court shall recall the sentence and resentence the defendant." (*Id.*, subd. (c).)

The statute provides specific instructions for the resentencing under section 1172.75. (See *People v. Monroe* (2022) 85 Cal.App.5th 393, 399 (*Monroe*).) First, the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).) Second, the trial court "shall

---

[2]    Senate Bill 483 also added section 1171, later renumbered as section 1172.7 (Stats. 2022, ch. 58, § 11), which made the changes previously implemented by Senate Bill No. 180 (2017–2018 Reg. Sess.) (Senate Bill 180) retroactive as well. Senate Bill 180 amended Health and Safety Code section 11370.2 to invalidate most three-year drug-prior sentence enhancements imposed before January 1, 2018. (Stats. 2017, ch. 677, § 1; see also Pen. Code, § 1172.7, subd. (a).)

apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) Third, the court "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).) Fourth, "[u]nless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1172.75, subd. (d)(4).) Finally, the court "shall appoint counsel" for the resentencing. (§ 1172.75, subd. (d)(5).)

The Legislature declared in an uncodified statement of intent in Senate Bill 483 "that in order to ensure equal justice and address systemic racial bias in sentencing, it is the intent of the Legislature to retroactively apply Senate Bill 180 of the 2017–18 Regular Session and Senate Bill 136 of the 2019–20 Regular Session to all persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements. It is the intent of the Legislature that any changes to a sentence as a result of the act that added this section shall not be a basis for a prosecutor or court to rescind a plea agreement." (Stats. 2021, ch. 728, § 1.)

6

B. *Standard of Review*

We review issues of statutory construction de novo. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.) Our fundamental task in interpreting a statute is to ascertain the Legislature's intent so as to effectuate its purpose. (*Ibid.*) We begin with the text of the statute and give the words their usual meaning while construing them in light of the statutory framework as a whole. (*Ibid.*) If the statutory language is unambiguous, then its plain meaning controls. (*Ibid.*) If the language "permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citation.] The wider historical circumstances of a law's enactment may assist in ascertaining legislative intent, supplying context for otherwise ambiguous language." (*People v. Prudholme* (2023) 14 Cal.5th 961, 976 (*Prudholme*), internal quotation marks omitted.)

"In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration." (*People v. Canty* (2004) 32 Cal.4th 1266, 1280.) Although such uncodified statements do not confer power, they "properly may be utilized as an aid in construing a statute." (*Ibid.*) The Legislature's statement of intent in Senate Bill 483 is found within the preamble, or what the Supreme Court has also referred to as a " 'plus section' "—"a provision of a bill that is not intended to be a substantive part of the code section or general law that the bill enacts, but to express the Legislature's view on some aspect of the operation or effect of the bill." (*People v. Allen* (1999) 21 Cal.4th 846, 858, fn. 13 (*Allen*).)

7

C. *Analysis*

Carter argues that simply striking the one-year enhancement imposed under the repealed portion of former section 667.5, subdivision (b) deprives him of his right to full resentencing under the changes in the law that resulted from the enactment of Senate Bill 483. According to Carter, the language of section 1172.75 and Senate Bill 483 demonstrate the Legislature's intent to apply the full-resentencing provisions of section 1172.75 to all sentences, whether stipulated or not. We agree.

We turn first to the language of the statute itself. Section 1172.75 provides that "[i]f the court determines that [a defendant's] current judgment includes an enhancement described in subdivision (a), the court *shall* recall the sentence and resentence the defendant." (§ 1172.75, subd. (c), italics added.) The statute also provides that, when resentencing, the "court *shall* apply . . . *any other changes in law* that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2), italics added.) "By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*Monroe, supra*, 85 Cal.App.5th at p. 402; see also *People v. Buycks* (2018) 5 Cal.5th 857, 893 [when a sentence is subject to recall, "the resentencing court has jurisdiction to modify *every* aspect of the sentence, and not just the portion subjected to the recall"].) Nothing in section 1172.75 indicates that sentences resulting from a plea agreement are exempt from its provisions.

The People concede that the plain language of section 1172.75 "appear[s] to give trial courts the authority to fully resentence" without making any exception for plea bargains or stipulated sentences. Yet the People contend that "where a defendant received a stipulated sentence, a

8

scenario not mentioned in the statute, these provisions conflict with section 1192.5" and "section 1192.5 controls."

We disagree. Section 1192.5 provides that upon acceptance of a plea agreement by the parties and approval by the court, "the court *may not* proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b), italics added.) Although the court may "withdraw its approval in the light of further consideration of the matter" (§ 1192.5, subds. (c)–(d)), "long-standing law limits the court's unilateral authority to strike an enhancement yet maintain other provisions of the plea bargain" (*People v. Stamps* (2020) 9 Cal.5th 685, 701 (*Stamps*)). Thus, where a defendant has received a stipulated sentence and a new ameliorative law creates a retroactive right to be resentenced, it "create[s] a statutory ambiguity with section 1192.5" regarding "*how* the law should be applied retroactively to existing plea agreements." (*Prudholme, supra*, 14 Cal.5th at pp. 973–974.)

The Supreme Court recently resolved similar ambiguities in *Stamps* and *Prudholme*, two cases that "involved the intersection of this statutory scheme of plea bargaining and the retroactivity rule" of *In re Estrada* (1965) 63 Cal.2d 740. (*Prudholme, supra*, 14 Cal.5th at p. 971.) In *Stamps*, the defendant pled guilty, and the parties agreed to a nine-year stipulated sentence, which included a mandatory five-year enhancement for a prior serious felony conviction. (§ 667, subd. (a); see *Stamps, supra*, 9 Cal.5th at p. 693.) While that case was on appeal, the Legislature enacted Senate Bill No. 1393 (2017–2018 Reg. Sess.) (Senate Bill 1393) (Stats. 2018, ch. 1013), which "removed provisions that prohibited a trial court from striking a serious felony enhancement in furtherance of justice under section 1385." (*Stamps*, at p. 700.) The defendant argued that Senate Bill 1393 applied retroactively to his plea bargain, and his case must therefore be remanded to

9

permit the trial court to exercise its discretion whether to strike the enhancement from his stipulated sentence. (*Id*. at p. 698.) The Supreme Court explained that "to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, defendant must establish not only that Senate Bill 1393 applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Id*. at p. 701.)

After analyzing the bill's legislative history, the *Stamps* court was "not persuaded that the Legislature intended" such a result. (*Stamps, supra*, 9 Cal.5th at p. 701.) The court found that although the "Legislature may have intended to modify the sentencing scheme, . . . the legislative history [of Senate Bill 1393] does *not* demonstrate any intent to overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement. Indeed, none of the legislative history materials mention plea agreements *at all*." (*Stamps*, at p. 702.)

The court distinguished the language at issue in *Stamps* from that in its earlier decision in *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*), which considered the effect of Proposition 47 on convictions, including those resulting from plea agreements. (*Stamps, supra*, 9 Cal.5th at pp. 702–703.) Proposition 47 reduced certain nonviolent crimes from felonies to misdemeanors and created a resentencing petition procedure applicable to those " 'serving a sentence for a conviction, *whether by trial or plea. . . .*' " (*Stamps*, at pp. 702–703, quoting *Harris*, at p. 991; see also § 1170.18, subd. (a).) *Harris* rejected the People's claim that they should be permitted to withdraw from a plea agreement where the defendant successfully petitioned

10

for resentencing under Proposition 47, explaining that "[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants." (*Harris*, at pp. 991–993.)  Indeed, the "resentencing process that Proposition 47 established would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner." (*Id.* at p. 992.)

The *Stamps* court, on the other hand, concluded that "[n]othing in the language and legislative history of Senate Bill 1393 suggests an intent to modify section 1192.5's mandate that 'the court may not proceed as to the plea other than as specified in the plea' without the consent of the parties. . . . That Senate Bill 1393 is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements." (*Stamps, supra*, 9 Cal.5th at p. 704.)  Accordingly, the court determined that the proper remedy for Stamps was a limited remand of his case to allow him to seek relief under Senate Bill 1393 with the understanding that, should the trial court exercise its discretion to strike the serious felony enhancement, the People would be entitled to withdraw from the plea agreement.  (*Id.* at pp. 707–708.)

The court considered a different statute in *Prudholme*.  There, the defendant's appeal was pending when the Legislature enacted Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950).  (See Stats. 2020, ch. 328, § 2, amending Pen. Code, § 1203.1; *Prudholme, supra*, 14 Cal.5th at p. 964.)  The defendant argued that the new law applied retroactively and required his probation term to be reduced to two years but that the terms of his plea agreement should otherwise remain in place.  (*Prudholme*, at p. 964.)

11

The Supreme Court again analyzed the bill's language, its legislative history, and its intersection with section 1192.5 to determine the remedy for retroactive application of the bill in plea bargain cases. (*Id.* at pp. 975–977.) The court agreed with the defendant that "employing the *Stamps* procedure and allowing the prosecution to withdraw from the plea agreement would appear contrary to the purposes underlying the new law," which included reducing the length of probation to increase probationary effectiveness and reducing the likelihood of incarceration for minor probation violations. (*Id.* at p. 977.) But like Senate Bill 1393 in *Stamps*, Assembly Bill 1950 "made no mention of the legislative intent regarding an application to pleas," and the "level of clarity" present in *Harris* therefore did not exist in *Prudholme*. (*Id.* at pp. 973, 975.) The court was thus required to analyze the legislative history of Assembly Bill 1950 to determine the Legislature's intent. The court determined that "the Legislature intended that its new limitations on the maximum term of probation in amended section 1203.1 should be applied to existing, nonfinal plea agreements while otherwise maintaining the remainder of the bargain." (*Id.* at p. 979.) The court therefore concluded that the proper remedy was to modify the judgment to reflect the new probationary term of two years. (*Ibid.*)

Here, unlike in *Stamps* and *Prudholme*, there is no question as to the retroactivity of Senate Bill 483. By its terms, the bill applies exclusively to sentence enhancements imposed before January 1, 2020 (§ 1172.75, subd. (a)), and the Legislature specified in its statement of intent "that in order to ensure equal justice and address systemic racial bias in sentencing, it is the intent of the Legislature to retroactively apply Senate Bill 180 of the 2017–18 Regular Session and Senate Bill 136 of the 2019–20 Regular Session to all

12

persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements" (Stats. 2021, ch. 728, § 1).

As in *Stamps* and *Prudholme*, however, the application of section 1172.75 to plea bargain cases creates a statutory ambiguity when considered in conjunction with section 1192.5, and the parties disagree as to the Legislature's intent in passing Senate Bill 483.[3]  Carter argues that the Legislature intended to allow all eligible defendants to be resentenced under section 1172.75 regardless of whether their previous sentence resulted from a plea agreement.  The People contend that the Legislature did not intend for the full-resentencing provisions of section 1172.75 to apply to stipulated sentences.  They argue that although the Legislature expressed its intention for trial courts to strike invalid prison-prior enhancements from stipulated sentences resulting from plea agreements, it expressed no such intention to alter the remainder of the plea agreements.  Alternatively, the People argue that if Carter is entitled to full resentencing, and the trial court reduces the sentence beyond just striking the prison prior, they are entitled to withdraw their assent to the plea agreement and presumably reinstate the original charges against Carter.

The First District Court of Appeal, Division One recently addressed this issue.  (*People v. Coddington* (2023) 96 Cal.App.5th 562 (*Coddington*).)  In *Coddington*, the defendant contended that section 1172.75 entitled him to full resentencing to seek further reductions of his sentence, which was imposed pursuant to a plea agreement, beyond just striking the one-year

---

[3]  The parties rely on Senate Bill 483's legislative history but neither has requested judicial notice of any legislative materials.  On our own motion, we take judicial notice of the legislative history materials cited in this opinion under Evidence Code sections 452, subdivision (c) and 459.  (See *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1541, fn. 9.)

13

prison-prior enhancement. (*Id.* at p. 567.) The appellate court agreed with the defendant on this point, concluding that he was permitted to seek further sentencing relief on remand "since the statute requires . . . the trial court to apply ' "any other changes in law that reduce sentences." ' " (*Id.* at p. 568, quoting *Monroe, supra*, 85 Cal.App.5th at p. 402.)

However, the court relied on *Stamps* to further conclude that although Coddington must be provided the opportunity to seek a full resentencing under section 1172.75, he would do so with the understanding "that if the court on remand indicates it is inclined to further reduce Coddington's sentence, the prosecution may withdraw its assent to the plea agreement." (*Coddington, supra*, 96 Cal.App.5th at p. 565.) The *Coddington* court determined that "[a]lthough the Legislature clearly intended that the striking of a sentencing enhancement for a prior prison term would not provide a basis for rescinding a plea agreement, this intent cannot be understood to govern other possible sentence reductions merely because they happen to occur during the same resentencing." (*Ibid.*) The court reviewed the legislative history and concluded that certain legislative "statements indicate a clear intent to 'overturn long-standing law that a court cannot unilaterally modify an agreed-upon term.' " (*Id.* at p. 572, quoting *Stamps, supra*, 9 Cal.5th at p. 701.) According to the *Coddington* court, however, those legislative statements "were limited to the context of prison priors." (*Ibid.*)

We agree with the *Coddington* court that a defendant eligible for removal of a prison prior under section 1172.75 must be provided an opportunity for full resentencing to argue for further relief under any other ameliorative changes in law that reduce sentences, regardless of whether their sentence resulted from a plea agreement. (*Coddington, supra*, 96

14

Cal.App.5th at p. 568; *Monroe, supra*, 85 Cal.App.5th at p. 402; § 1172.75, subd. (d)(2).)  Where we part ways with *Coddington*, however, is on the question of whether the prosecution is then entitled to withdraw from the parties' plea agreement should the trial court choose to exercise its discretion in further reducing the defendant's sentence beyond merely striking the one-year prison-prior enhancement.  We conclude that the answer is no.

The *Coddington* court observed, as we have, that when the Legislature enacted Senate Bill 483, "it specifically declared in an uncodified section that it was 'the intent of the Legislature that any changes to a sentence as a result of the act that added this section shall not be a basis for a prosecutor or court to rescind a plea agreement.' " (*Coddington, supra*, 96 Cal.App.5th at p. 570, quoting Stats. 2021, ch. 728, § 1; see also *Stamps, supra*, 9 Cal.5th at pp. 702–704 [entering a plea agreement does not insulate the parties from a law the legislature expressly intends to apply to them].)  The court then stated: "The trial court here followed Senate Bill No. 483's clear directive in striking the prison prior but otherwise leaving intact the plea agreement." (*Coddington*, at p. 570.)

But the court did not explain where it found this "clear directive," and we do not see it.  The statement of legislative intent in Senate Bill 483 does not differentiate between a sentence reduced by removal of the prison-prior enhancement and a sentence reduced due to other resentencing decisions made by the trial court.  Instead, it broadly refers to "any changes" to the sentence resulting under the new law and then states that those changes do not give the prosecution a right to withdraw from a plea agreement.  (Stats. 2021, ch. 728, § 1.)  Nor does the statutory language or legislative history make such a distinction.  In fact, the statute does not even allow a court to merely strike a legally invalid prison-prior enhancement.  Instead, section

15

1172.75 is structured solely as a resentencing law—the *only* relief it authorizes is for the court to "recall the sentence and resentence the defendant" under current sentencing laws if the judgment includes a now-invalid prison-prior enhancement. (§ 1172.75, subd. (c).) We will not infer an intent not expressed in the Legislature's language. (See *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73–74 ["A court may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed."].)

In our view, the Legislature's clear directive is that *any* reduction of the defendant's sentence on resentencing shall not be a basis for the prosecutor or the court to withdraw from a plea agreement. The Legislature expressly stated that "*any changes* to a sentence as a result of the act that added this section *shall not be a basis for a prosecutor or court to rescind a plea agreement*." (Stats. 2021, ch. 728, § 1, italics added.) The all-inclusive phrase "any changes to a sentence as a result of the act" (*ibid*.) can only be understood to include changes resulting from the law's resentencing provision, which provides for full resentencing and states that it "shall result in a lesser sentence" unless it would endanger public safety and "shall not result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).)

The language at issue here is closer to that in *Harris*, which expressly mentioned plea agreements, than to the provision and legislative history materials in *Stamps* or *Prudholme*, which did not. The Supreme Court concluded in *Harris* that "[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants." (*Harris, supra*, 1 Cal.5th at pp. 991–993.) The same is true here. The statement of intent in the "plus section" of Senate Bill 483, which expressed the Legislature's view

16

on the effect of the bill (see *Allen, supra*, 21 Cal.4th at p. 858, fn. 13), expressly mentions plea agreements and prohibits both the court and the prosecution from rescinding the plea agreement based on *any* change to the sentence resulting from the law.  And as in *Harris*, the "resentencing process" established by section 1172.75 "would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner."  (*Harris*, at p. 992.)

Additional legislative history materials are consistent with our interpretation of the Legislature's intent here.  The Assembly Committee on Public Safety's analysis of Senate Bill 483 emphasized the bill author's statement "that long prison and jail sentences have no positive impact on public safety, but are demonstrably injurious to families and communities— particularly Black, Latino, and Native Americans in the United States and in California."  (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 483 (2021– 2022 Reg. Sess.) July 13, 2021, p. 3.)[4]  It also included a section titled "Effect on Guilty Pleas," which expressly stated that the "legislative intent [is] that its provision for retroactive application *and resentencing* applies to guilty plea cases.  *This would include those in which there may have been a negotiated disposition*."  (*Id*. at p. 4, italics added.)  The report went on to quote the Supreme Court's holding in *Doe v. Harris* (2013) 57 Cal.4th 64, 66, 71, 73 that "plea agreements are deemed to incorporate the reserve power of the

---

[4]     The Senate Committee on Public Safety's report further explained that those released after incarceration "face significant barriers to finding jobs and housing.  Family members of incarcerated people struggle with crushing debt from court costs, visitation and telephone fees, and diminished income. *The longer the sentence, the more severe these problems tend to be, and the tougher it is for societal reintegration*."  (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 483 (2021–2022 Reg. Sess.) Apr. 27, 2021, p. 3, italics added.)

state to amend the law"; the fact that "parties enter into a plea agreement thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them"; and it therefore follows "that requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 483 (2021–2022 Reg. Sess.) July 13, 2021, p. 4.) The Committee's report also confirmed the "Legislative intent that any changes to a sentence as a result of these provisions is not a basis for a prosecutor or a court to rescind a plea agreement." (*Id*. at p. 2.) Like the uncodified statement, this language did not distinguish between the removal of prison priors and other potential sentence reductions.

Several other legislative committee reports on Senate Bill 483 also noted the Legislature's intent to prohibit rescission of a plea agreement based on *any* change in sentence resulting from the law. (See Senate Third Reading on Sen. Bill No. 483 (2021–2022 Reg. Sess.) as amended Sept. 1, 2021, p. 2 [the bill "[s]tates Legislative intent that any changes to a sentence as a result of these provisions is not a basis for a prosecutor or a court to rescind a plea agreement."]; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 483 (2021–2022 Reg. Sess.) as amended Sept. 1, 2021, p. 4 [same].)

The *Coddington* court did not mention these committee reports, but it cited to the Legislative Counsel's Digest for Senate Bill 483 as stating "that the legislation would declare prison priors 'to be legally invalid' and would state the intent of the Legislature to prohibit the rescission of a plea agreement *based on eliminating them*." (*Coddington, supra*, 96 Cal.App.5th at pp. 571–572, italics added.) But the actual language of the Legislative Counsel's Digest is broader than what *Coddington* suggested. Consistent with the bill's uncodified statement of intent and the legislative committee

reports, it explained: "The bill would state the intent of the Legislature to prohibit a prosecutor or court from rescinding a plea agreement based on a change in sentence as a result of this measure." (Legis. Counsel's Dig., Sen. Bill 483 (2021–2022 Reg. Sess.), Stats. 2021, ch. 728.) The Legislative Counsel's Digest also specifically mentioned the bill's resentencing provisions and its requirement "that the resentencing result in a lesser sentence, unless the court finds that a lesser sentence would endanger public safety." (*Ibid.*) We therefore conclude that the legislative history of Senate Bill 483 supports our view of a broader legislative intent.[5]

We disagree with *Coddington* that this result is equivalent to finding that the provisions of section 1172.75 "overrule *Stamps* as to the resentencing of all enhancements of all defendants who accepted a prison prior under a plea deal." (*Coddington, supra*, 96 Cal.App.5th at p. 571.) This is not a matter of "overruling" *Stamps*. *Stamps* involved a different statute, with different statutory language and legislative history. As *Stamps* itself made clear, the question of how an ameliorative statute applies to plea-bargained sentences is one of legislative intent. (*Stamps, supra*, 9 Cal.5th at pp. 701–

---

[5] The People also argue that the deletion of language from a prior version of Senate Bill 483 declaring the affected enhancements to be legally invalid "regardless of whether the sentence was imposed after trial or open or negotiated plea" demonstrates the Legislature rejected such a provision. (Sen. Bill No. 483 (2021–2022 Reg. Sess.), as amended July 7, 2021 and July 15, 2021.) The deletion of this language does not support the People's position for two reasons. First, the final version of the bill still includes language explicitly referencing plea agreements. The Legislature may have simply found this additional language to be unnecessary because the rest of the bill already made clear that the statute applies to guilty pleas. Second, the People concede that Carter's prison prior enhancement is legally invalid under section 1172.75 even though (1) it was imposed after a guilty plea, and (2) the statute as enacted did not include the deleted language. Thus, the People's reliance on the prior version of Senate Bill 483 does not assist them.

702.) *Stamps* had nothing to say about the legislative intent behind section 1172.75.

The People also argue that even assuming the Legislature intended to apply the full-resentencing provisions of section 1172.75 to stipulated sentences, effectuating that intent violates the federal and state contracts clauses. We conclude that the People do not have standing to assert such a violation.

The United States and California Constitutions' contracts clauses "prohibit states from passing laws impairing the obligation of contracts." (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1068, citing U.S. Const., art. I, § 10, cl. 1 & Cal. Const., art. I, § 9 [rejecting defendant's contracts clause challenge to plea agreement].) However, these prohibitions "do not prevent the legislature from changing the contractual rights of its political subdivisions acting in a governmental capacity," because "there can be no impairment of contracts upon a voluntary relinquishment by the state of any contractual rights it may have acquired." (*County of Alameda v. Janssen* (1940) 16 Cal.2d 276, 284 (*Janssen*).) It is thus a "well-established rule that subordinate political entities, as 'creatures' of the state, may not challenge state action as violating the entities' rights" under the contracts clause. (*Star-Kist Foods v. County of Los Angeles* (1986) 42 Cal.3d 1, 6 (*Star-Kist Foods*); see also *Cox Cable San Diego, Inc. v. City of San Diego* (1987) 188 Cal.App.3d 952, 966–967 (*Cox Cable*) [because city was political subdivision of the State and acting in its governmental capacity, it had no standing to claim contract impairment "in opposition to acts of the State Legislature"].)

This well-established rule applies here. A county district attorney acts as an agent of the State of California when prosecuting crimes. (*People v. The North River Ins. Co.* (2018) 31 Cal.App.5th 797, 806; see also § 684 ["A

criminal action is prosecuted in the name of the people of the State of California, as a party . . . ."].)  Thus, a plea bargain such as the one between Carter and the People is essentially a contract entered into by the district attorney *on behalf of the state*.  (See *People v. Kim* (2011) 193 Cal.App.4th 1355, 1360 ["like the parties to a private contract, the state and the defendant are bound by the [plea] agreement as between themselves"].)  It follows that when the People enter into a contract on behalf of the state, they cannot later assert that the state has unconstitutionally passed a law impairing that contract.  (See *Janssen, supra*, 16 Cal.2d at p. 284.)  As a representative of the state acting in its governmental capacity, the district attorney therefore "has no standing to raise the defense of impairment of contract[.]"  (*Cox Cable, supra*, 188 Cal.App.3d at p. 967; see also *Star-Kist Foods, supra*, 42 Cal.3d at p. 6.)

In sum, we determine that, in enacting Senate Bill 483, the Legislature intended that the full resentencing procedure in section 1172.75 should be applied to all sentences, including stipulated sentences imposed as part of a plea bargain, and that the prosecution may not withdraw from the plea bargain if the court imposes a lower sentence on resentencing.  The trial court therefore erred in refusing to resentence Carter beyond striking his one-year prison prior.

21

## DISPOSITION

The order is reversed. The case is remanded for further proceedings consistent with this opinion.

BUCHANAN, J.

WE CONCUR:

DATO, Acting P. J.

DO, J.